## BAXTER *v.* DUVALL.

Opinion delivered February 20, 1922.

1. TRIAL—TRANSFER OF CAUSE—EFFECT.—Though a case appealed from the probate court to the circuit court cannot properly be transferred to the chancery court, yet where a case so appealed might properly have been brought originally in the chancery court, and no objection to the transfer was made, it will be treated on appeal as if the case had been withdrawn or dismissed in the circuit court and then filed in the chancery court.

2. APPEAL AND ERROR—FINDING OF CHANCELLOR.—A finding of the chancellor that a surrender by a widow of the interest of herself and her minor children was procured by fraud and without consideration *held* sustained by the evidence.

Appeal from Pope Chancery Court; *Jordan Sellers,* Chancellor; affirmed.

*Hays & Ward,* for appellant.

Appellee knew her rights, and gave her reasons for not insisting upon them to the fullest extent. There was no fraud in the procurement of the probate court order, but the transaction was in the nature of a family settlement, which are favored by courts of equity. 2 Pomeroy's Equity Juris. sec. 850 (4th Ed.) ; 98 Ark. 93.

Appellee has not discharged the burden of proof resting upon her.

This case is distinguished from that in 75 Ark. 240, as there was no mutual mistake as to the rights of the widow, and the further fact that here there has been a complete performance.

*J. T. Bullock,* for appellee.

There was no consideration for the purported release signed by appellee. It was signed through ignorance of her rights.

Family settlements are favored where matters are in dispute. There was no dispute here, as the law fixed the dower of appellee. Sec. 3544, C. & M. Digest.

HUMPHREYS, J. G. W. Duvall died intestate at his home in Pope County, Arkansas, on the 5th day of February, 1920, leaving him surviving his widow, Florence Duvall, and their two minor children, Glenn and Evelyn, who are the appellees herein; and seven children by his first wife, who are the appellants herein. G. W. Duvall died the owner of personal property afterwards appraised at $2,893, and was seized and possessed of 240 acres of land, 160 acres of which was upland and 80 acres creek land. These tracts were a quarter of a mile apart. He and his family resided upon the 160-acre tract. The main improvements, including the dwelling house, were upon the west half of the 160-acre tract, a proper description of which is the west half of the northwest quarter of section 22, township 8 north, range 19 west, in said county. R. Y. Duvall, a son by the first marriage, was

appointed administrator of the estate. Florence Duvall was appointed guardian of the two minor children, Glenn and Evelyn Duvall.

On the 13th day of April, 1920, an order was procured from the probate court of said county, in substance as follows: Personal property of the value of $861.90 was adjudged to the widow and minor children and the remaining personal property was adjudged to the administrator free of any claim or demand of Florence Duvall as surviving widow of G. W. Duvall, deceased. The west half of the 160-acre tract of land was set apart and assigned to the widow and two minor children as their homestead and in full of the dower rights of the widow in the other real estate. The following document was made the basis for the aforesaid order:

"Moreland, Arkansas, March 29, 1920. To the Hon. Probate Court of Pope County, Arkansas: I, Florence Duvall, widow of G. W. Duvall, deceased, most respectfully ask that you set apart the following as my interest in said estate, and if the said request is granted, I relinquish to the children of my late husband all other property belonging to said estate. See list on next page. Personal property: One black horse, 4 years old, valued at $175; one mare, valued at $45; one cow, valued at $40; one heifer, valued at $20; one combination planter, valued at $15; three hogs, worth $45; balance of lard and meat, valued at $51.90. Total $411.90. Also the property listed by the appraisers to me; also, life dower and portion of the following real estate, same to be set apart as my homestead for life, and at my death to descend to the children of my late husband, G. W. Duvall, deceased; also my minor children, Glenn and Evelyn Duvall. (Signed) Mrs. G. W. Duvall."

An appeal from the order aforesaid was prosecuted by appellees to the circuit court of Pope County. On August 12, 1920, this suit was instituted by appellees, Florence Duvall and her two minor children, Glenn and

Evelyn Duvall, against the appellants, Mollie Baxter, R. Y. Duvall, F. M. Duvall, E. H. Duvall, Nora Grayham, Nannie Brown, and Ellis H. Duvall, children of G. W. Duvall, deceased, in the chancery court of said county to cancel the document made the basis of the order in the probate court, on the alleged grounds, first, that it was without consideration to support it; and, second, that it was obtained through the fraudulent misrepresentations of the administrator. Also for the recovery of rents and profits due her in her individual capacity and as guardian for her minor children, and the balance due her on account of her dower interest in the personal estate. An answer was filed by appellants, denying the material allegations of the bill. By consent of all the parties, and without objection of appellants in the court below or in this court on appeal, the appeal from the order of the probate court to the circuit court was transferred, at the November term of said circuit court, to the chancery court of Pope County and consolidated with the chancery suit for cancellation of the contract made the basis of the order of the probate court, and submitted to the chancery court, as a consolidated case, upon the pleadings and evidence, which resulted in a decree canceling the purported agreement made the basis for the order in the probate court upon the ground that it was without consideration and a fraud upon the rights of Florence Duvall and her two minor children in the estate of the deceased, and for $552.43 in favor of Florence Duvall against the administrator for the balance due her on account of dower in said estate and for a homestead interest of the widow and minors in the real estate and the widow's dower in the other lands, in accordance with the statutes of this State, together with rents thereon. Commissioners were appointed to set aside the homestead and dower interests in the lands and to ascertain the amount of rents due the widow and minor children, and to report, from which decree is this appeal.

It will be observed in the statement of the proceedings detailed above that the proceeding for the assignment of dower pending in the circuit court on appeal from the probate court was transferred from the circuit court to the chancery court and consolidated with the suit for cancellation of the instrument made the basis of the probate order without objection, and by and with the consent of all parties. The transfer was erroneous, because, under the statute authorizing transfer of causes, only such causes as originate in the circuit court can be transferred to the chancery court. *McLain* v. *Brewington,* 138 Ark. 157. The subject-matter of the suit filed in the chancery court could have been interposed in the circuit court as a defense to the action for the assignment of dower pending in that court on appeal from the probate court. Chancery courts have concurrent jurisdiction with probate courts in matters of assignment of dower. Under these circumstances, we see no reason why, with the consent of the parties in both proceedings, the proceeding could not have been withdrawn or dismissed in the circuit court, and filed in the nature of an amendment to the suit in chancery. The parties did not object, but consented, to the transfer. So we have concluded to treat their action as tantamount to a withdrawal of the proceedings in the circuit court and the filing of same by way of amendment to the suit pending in the chancery court.

Appellants' only insistence for reversal of the decree is that it is contrary to the weight or preponderance of the evidence. The testimony reflects that G. W. Duvall died intestate, owning personal property valued at $2,893, and 240 acres of real estate, valued at $12,000, and that there was no indebtedness against the estate. Under the statutes of this State the widow was entitled to one-third of the personal estate and an additional sum of $150, and she and her two minor children to $300 out of the personal estate, and out of the real estate the widow and minor children were entitled to

the minimum of 80 acres as a homestead, the same being farm lands upon which her husband, herself and children resided at the time of his death, and the widow to one-third of the whole amount of the real estate laid off on some other part of the land than the homestead.

The instrument sought to be canceled, which was made the basis of the probate order, in effect surrendered the entire estate of the widow and two minor children in the estate, for $861.90 as their part of the personal property, and 80 acres, upon which the improvements were located, as the widow's interest in the real estate. The instrument, upon its face, was a voluntary surrender on the part of the widow for herself and her minor children of a large part of their interest in said estate without consideration. The children were of tender years, and the widow without experience in business matters. According to her testimony she was entirely ignorant of the law governing the rights of herself and her two minor children, and she signed the paper without reading it, on the representation that it was an agreement by which she was to receive the homestead and one-third of the personal estate and the other lands. She did not know the instrument was addressed to the probate court and was a petition for the assignment of dower, and did not know it was ever used for that purpose until it was shown her by her attorney after the case had been appealed to the circuit court. The widow's testimony was corroborated by that of her 12-year-old son, who testified that he heard the conversation between R. Y. Duvall, the administrator, and his mother with reference to dividing the property, and also heard Ellis Duvall and his mother talking about it; that his understanding was that his mother was to get a dower of 80 acres and one-third of all the rest of the land; that he heard his mother, in conversation with F. M. Hudson, say that she had signed up for 80 acres and one-third; that, pursuant to his understanding, when the oats were cut he went to the barn and told R. Y. and Ellis Duvall that his mother's

part of the oats was 40 bushels, and was informed that her part was only 13 bushels, as she was to receive only that part raised on the 80 acres selected by his mother as their homestead.

The instrument denominated a contract or petition was drawn by F. M. Hudson, the uncle of R. Y. Duvall, and his brothers and sisters. According to the evidence of the Duvalls and Hudsons, Mrs. Florence Duvall understood the extent of the interest of herself and two minor children in the estate at the time she signed the instrument and understood the contents thereof; the reason assigned by her for voluntarily surrendering a large part of the interest of herself and children in the estate was that she did not want to be worried with looking after more than the 80-acre tract selected by her as the homestead for herself and children. R. Y. Duvall also denied having misrepresented the contents of the instrument to Florence Duvall at the time she signed it. The generosity attributed by the witnesses for appellants to the widow, Florence Duvall, in surrendering valuable interests in the estate without consideration is slightly out of joint with reason and the ordinary affairs of men. A person burdened with the support, care and education of two minor children of tender years, possessed of such a small amount of worldly goods, would not voluntarily part with his property without compensation. We think Mrs. Duvall's explanation to the effect that she signed the paper without appreciating its contents, thinking that it was a settlement out of court, and covering the entire interest of herself and minor children in the estate, comports with human nature and is in keeping with the transactions of men in the ordinary affairs of life. To say the least of it, the evidence is in sharp conflict, and we are unable to say, when weighed in the light of all the circumstances, that the conclusion reached by the chancellor is contrary to the weight of the evidence.

No error appearing, the decree is affirmed.